## Henry C. Wahlmann, Administrator of the Estate of Victor Hahn, Deceased, Plaintiff, v. C. Becker Milling Company, Defendant.

1. MASTER AND SERVANT, § 120*—*when superintendent of mill under no duty to install guards for machinery*. A superintendent in charge of machinery, in a mill, and who is injured, does not incur a penalty under the Act of 1909 (J. & A. ¶ 5386 *et seq.*), relating to the health and safety of employees, for failure to install guards for machinery which he had not been directed by the master to place therein where the master was actively participating in and managing the business of the going concern, as the duty to install the machinery primarily lies upon the master.

2. MASTER AND SERVANT, § 302a*—*when assumed risk by servant no defense*. In an action to recover for the death of plaintiff's intestate while "doping" an unguarded pulley belt while it was in motion, the fact that deceased may have been negligent and assumed the risk of working at the machinery without guards does not relieve the employer from doing what is required of him by the Act of 1909 (J. & A. ¶ 5386 *et seq.*), relating to the health and safety of employees, or relieve him from the penalty of the withdrawal of the defenses of contributory negligence and assumed risk.

3. MASTER AND SERVANT, § 430*—*when defense of contributory negligence unavailable*. The defense of contributory negligence of a servant is no defense to an action for injuries to an employee due to a violation of the statutory duty imposed by the Act of 1909 (J. & A. ¶ 5386 *et seq.*), to guard machinery.

4. MASTER AND SERVANT, § 302a*—*how act relating to health and safety of employees construed*. The Act of 1909 (J. & A. ¶ 5386 *et seq.*), relating to the health and safety of employees, is to be given the same construction as the Miners' Act (J. & A. ¶ 7475 *et seq.*), as to the defenses of assumed risk and contributory negligence.

5. MINES AND MINERALS, § 117*—*when defense of assumption of risk unavailable*. Assumed risk is unavailable as a defense in a suit for damages caused by a wilful violation of the Miners' Act (J. & A. ¶ 7475 *et seq.*).

6. MINES AND MINERALS, § 125*—*when contributory negligence no defense*. Contributory negligence is unavailable as a defense in a suit for damages caused by a wilful violation of the Miners' Act (J. & A. ¶ 7475 *et seq.*).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. MASTER AND SERVANT, § 706*—*when question whether injured employee was such superintendent as to be deprived of benefits of act relating to safety of employees is for jury.* The fact that a mill superintendent was receiving wages and not only looking after machinery but performing work which required him to pass near the machinery which injured him is such evidence that he was an employee that a court cannot say as matter of law that he was at the time such a superintendent as would deprive him of the benefits of the act of 1909 (J. & A. ¶ 5386 *et seq.*), relating to the health and safety of employees.

8. MASTER AND SERVANT, § 706*—*when question whether injured superintendent was an employee entitled to benefits of act for safety of employees is for jury.* The question whether a mill superintendent who, when injured, is performing work as well as looking after machinery is an employee within the meaning of the Act of 1909 (J. & A. ¶ 5386 *et seq.*) is a question of fact for the jury under the instructions of the court.

9. MASTER AND SERVANT, § 171*—*what does not constitute repairing of machinery.* "Doping" pulley belts, in order to keep them from slipping, is not "repairing" them within the meaning of section 1 of the Act of 1909 (J. & A. ¶ 5386), relating to the health and safety of employees, providing that "no repairs shall be made to the active mechanism or operative part of any machine when the machine is in motion."

10. WORDS AND PHRASES, — *word "repair" defined.* The word "repair" means "to restore to a sound or good state after decay, injury, dilapidation or partial destruction."

11. MASTER AND SERVANT, § 716*—*when question whether necessary to stop machine before doping belts for jury.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" an unguarded pulley belt while it was in motion, it is a question of fact for the jury, under proper instructions, whether in the practical operation of the particular machinery it was necessary to stop the machine before applying the "dope."

12. MASTER AND SERVANT, § 158*—*when necessary to guard machinery in mill where pulley belts "doped" in action.* Under section 1 of the Act of 1909 (J. & A. ¶ 5386 *et seq.*), requiring that "all dangerous places in or about * * * mills * * * near to which any employee is obliged to pass, or to be employed shall, where practicable, be properly inclosed, fenced or otherwise guarded," where it is not necessary that machinery be stopped before applying "dope" to pulley belts to prevent their slipping, such machinery must be guarded or fenced so as to offer the least possible chance for injury to those operating it.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CXCVIII 39

13. MASTER AND SERVANT, § 501*—*when failure of servant to stop machinery to dope belts no defense.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" an unguarded pulley belt while it was in motion, an employer is not allowed to defend on the ground that deceased should have stopped the machinery before "doping" the belt, although section 1 of the Act of 1909 (J. & A. ¶ 5386 et seq.), relating to the health and safety of employees, provides that "no repairs shall be made to the active mechanism or operative part of any machine when the machine is in motion."

14. MASTER AND SERVANT, § 795*—*when instruction that if deceased is superintendent of mill no recovery could be had properly refused.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" unguarded pulley belts while they were in motion, an instruction that if deceased was the head miller or superintendent of defendant's mill he could not recover, is properly refused where his management is subject to the control of the operators of the mill and where it was also part of his duties to work in the mill as a miller, in which case deceased is not deprived of the benefit of the Act of 1909 (J. & A. ¶ 5386 et seq.), relating to the health and safety of employees.

15. MASTER AND SERVANT, § 797*—*when instruction on assumed risk properly refused.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" a pulley belt while it was in motion, an instruction presenting the question of assumed risk is properly refused, since such defense is taken away from the employer by the Act of 1909 (J. & A. ¶ 5386 et seq.).

16. MASTER AND SERVANT, § 800*—*when instruction that if guards insufficient to protect deceased no recovery could be had properly refused.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" an unguarded pulley belt while it was in motion, an instruction that if the guards mentioned in the instruction would have been insufficient to protect deceased while so engaged plaintiff could not recover is properly refused, such instruction practically informing the jury that they must find for defendant unless the guards would furnish absolute protection to those working around the machinery.

17. MASTER AND SERVANT, § 130*—*when master may not delegate duties.* The duties imposed by the Act of 1909 (J. & A. ¶ 5386 et seq.), relating to the health and safety of employees and the guarding of machinery, cannot be delegated by the employer.

18. MASTER AND SERVANT, § 800*—*when instruction that danger from machinery must be entirely eliminated properly refused.* In an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" an unguarded pulley belt while it was in motion, an instruction requiring that danger from the machinery be entirely eliminated is properly refused under the Act of 1909 (J. & A. ¶ 5386 *et seq.*), relating to the health and safety of employees, in that such instruction ignores the question of the practical operation of the machinery.

19. MASTER AND SERVANT, § 800*—*when instruction defining meaning of "dangerous machinery" properly refused.* In an action to recover for the death of plaintiff's intestate as a result of injuries sustained while "doping" an unguarded pulley belt while it was in motion, instruction attempting to define the meaning of "dangerous machinery," as used in the law, and also calling the attention of the jury to the question of deceased's having worked around the machinery for five years, is erroneous and is properly refused.

20. INSTRUCTIONS, § 81*—*when instruction emphasizing facts properly refused.* An instruction calling attention to particular facts is erroneous, and is properly refused.

Appeal from the Circuit Court of Randolph county; the Hon. W. E. HADLEY, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed December 1, 1915. Rehearing denied April 5, 1916.

LASHLEY, BOLLINGER & HORNER, for appellant.

A. E. CRISLER and A. D. RIESS, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

This case was before this court at its March Term, 1914, and is reported in volume 188 Appellate Reports at page 381. On the former hearing, said cause was reversed and remanded on the ground that the trial court erred in taking the case from the jury and entering judgment against appellee for costs.

On the subsequent trial a verdict for $6,000 was returned by the jury and judgment rendered thereon, from which judgment this appeal is prosecuted.

The opinion rendered on the former hearing contains a pretty complete statement of the facts in con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

nection with said injury and they need not be restated at length. At the former hearing in this court, one of the principal contentions urged by appellant why appellee should not recover in this suit was because it was claimed that appellee was acting as superintendent of appellant's mill at the time of his injury, and that therefore under the law, it was his duty as such superintendent to see that the machinery in question was properly guarded; and that his failure to do so would bar his administrator from a recovery for his death.

This question was gone into fully on the hearing at that time and our views on this question are fully set out in the opinion. We there said: "It is said by counsel for defendant that the cost of repairing or placing of guards over these pulleys would be but a trifle and that the deceased could easily have placed such guards, and that by his failure so to do he became liable for a penalty. We do not believe that a person in charge of the machinery, taking care of it, as the deceased was, would incur a penalty for failure to install machinery that he had not been directed by the master to place therein when the master was actively participating in and managing the business of the going concern. This duty primarily rested upon Becker. The theory that the plaintiff cannot recover because of his failure or neglect to place the guards upon the machinery must be based upon the principle that although he may have been an employee, as he certainly was, he was guilty of negligence and assumed the risk of working with the machinery without guards. But, if this were true, it would not excuse the defendant from doing what the law requires of him, and the penalty imposed upon the defendant is to withdraw from it the defense of contributory negligence and assumed risk. The Supreme Court of this State seems to construe this act the same as the Mining Act, for it says, in the case of *Streeter v. Western Wheeled Scraper Co.*, 254

Ill. 257, 1 N. C. C. A. 828: 'For many years we have held, in the construction of the Mining Act, that neither assumed risk nor contributory negligence is available as a defense to a suit for damages caused by a wilful violation of the provisions of that act. *Bartlett Coal & Mining Co. v. Roach,* 68 Ill. 174. * * * This law was passed to protect employees, and in view of the construction given to the Mining Act in regard to the assumption of risk, the General Assembly must have supposed that the same construction would be given to this act in that regard.' Waiving the question as to the effect that the neglect of the deceased to place guards upon these pulleys would have upon the right of action for his injury, and the limiting of the right of defense of the defendant, yet the evidence shows he was receiving wages and not only looking after the machinery but was performing work, and performed such work as required him to pass near these pulleys, and there was at least evidence tending to show that he was an employee, and the evidence was not of that character that would warrant a court in saying that as a matter of law he was such a superintendent as would deprive him of the benefits of the statute. We think the case should have been submitted to the jury.'' This question is now sought to be reopened by appellant through its instructions, but we do not deem it necessary to again go into this question as we believe it to be one of fact for the jury under the instructions of the court.

Appellant also urges as ground for the reversal of said judgment, first, that ''doping'' the belts in order to keep them from slipping was, under the provision of the statute, the making of repairs, and that it was the duty of appellee's intestate to stop the machinery for said purpose; second, that the guards suggested by plaintiff's witnesses would not protect employees passing or working near the dangerous machinery; in other words, that they were not such guards as the statute contemplated.

First: The first section of the act entitled "An Act to provide for the health, safety and comfort of employees in factories, mercantile establishments, mills, and workshops in this State," passed by the Legislature in 1909, provides among other things that "All dangerous places in or about mercantile establishments, factories, mills or workshops, near to which any employee is obliged to pass, or to be employed shall, where practicable, be properly inclosed, fenced or otherwise guarded. No machine in any factory, mercantile establishment, mill or workshop, shall be used when the same is known to be dangerously defective, and no repairs shall be made to the active mechanism or operative part of any machine when the machine is in motion." (J. & A. ¶ 5386.)

It is urged by appellant that the provision "no repairs shall be made to the active mechanism or operative part of any machine when the machine is in motion" would apply to the "doping" of the belt as was testified to in this case; that when the deceased, Victor Hahn, was doping the belt he was repairing the machine, and was therefore violating the statute above referred to which prohibits making repairs when the machine is in motion.

We do not believe that such things as oiling machinery, or doping belts to prevent their slipping, has ever been called or classified as repairs by mechanists. The definition given by Webster for the word "repair" is: "To restore to a sound or good state after decay, injury, dilapidation or partial destruction." We think it must be held that the Legislature in using the word "repair" gave to it its ordinary meaning.

Second: It is contended by appellant that under the provisions of the Statute of 1909 (J. & A. ¶ 5386), requiring "All dangerous places in or about mercantile establishments, factories, mills or workshops, near to which any employee is obliged to pass, or to be employed shall, where practicable, be properly inclosed, fenced or otherwise guarded," requires that machinery,

of the character of the "Nordyke roll" and "Allis roll" in appellant's mill shall be entirely inclosed.

It was urged by appellant that if the machinery were inclosed that then before the belts mentioned could be doped, it would be necessary to remove the covering from the machinery, and that if this were done appellant would not be required to otherwise guard the machinery. In other words, it is urged by appellant that the machinery in question should be entirely covered, and that before the belts could be "doped" this covering must be removed, and, when removed, the machinery would be in the same condition it was in at the time appellee's intestate was injured.

It is, therefore, argued that it cannot be said that the failure to guard or protect the machinery in question was the proximate cause of the injury to appellee's intestate. Appellant also contends that in the practical operation of said machinery, said machinery should be stopped when the "dope" is to be applied.

On the other hand, appellee contends that in order for the practical operation of appellant's mill, it was necessary that the "dope" should be applied to the belts to keep them from slipping while in motion; that to require the machinery to be stopped every time the "dope" was applied would greatly retard the operation of the mill.

Appellee also contends that it is practicable to fence or guard the machinery in question in such a manner as to allow the doping of the belts while in motion with the danger to the person so applying said dope greatly reduced. The evidence offered by appellee tends to prove that the machinery in question could be so guarded, fenced or protected as to allow the doping of the belts in question with a minimum of danger to the person applying the "dope." We are inclined to hold that under the evidence in this case it was a question of fact for the jury under the instructions of the court to say whether in the practical operation of the machinery of appellant it was necessary to stop the

machinery before applying the dope in question. If it should be held that the machinery should not be so stopped, in its practical operation, then it follows as a legal conclusion under the statute that the machinery should be so guarded or fenced as ''to offer the least possible chance for injury to those operating it.'' (Paragraph 1, sec. 31, of act above cited [J. & A. ¶ 5416].)

It should also be borne in mind that as the machinery was in fact operated by appellant, it was one of the duties of appellee's intestate to apply the ''dope'' to the belts when the machine was in motion, and we do not believe that appellant should now be allowed to say that appellee's intestate should have stopped the machinery before so applying the same.

Appellant objects to certain of the instructions given by the trial court on behalf of appellees. However, in its argument it practically admits that there is no serious error in these instructions under the holding of this court on the former hearing of this cause. We have examined the instructions offered on behalf of appellee, and find no serious objection to them, as we think they present the law fairly to the jury in keeping with our former holding in this case, and in keeping with what we have said in this opinion.

Appellant offered on the trial thirteen instructions, all of which were refused by the trial court, and for the refusal of which appellant assigns error. Instructions one, two, three, six, seven, eleven and twelve presented appellant's theory of the case and the law governing the same. But each of these instructions appellant, in effect, concedes do not state correct principles of the law if the former holding of this court is correct. It is, therefore, unnecessary to give these instructions any further notice, as none of them, in our judgment, correctly state the law governing this case as it was laid down in our former opinion.

The fourth instruction informs the jury as a matter of law that if appellee's intestate was the head miller

or superintendent of the mill that then he could not recover, which would be squarely against our former holding in this case.

Appellant's fifth instruction presents the question to the jury of assumed risk, which was clearly erroneous, as under the law governing this character of case the doctrine of assumed risks has been eliminated.

Instruction No. 8 informs the jury that if they believe from the evidence that the guards mentioned would be insufficient to protect deceased from injuries he might receive while working around the machinery, "doping" the belts, etc., that then they should find the issues for the defendant. We believe there was no error in refusing this instruction, as it practically informed the jury that they must find for the defendant, unless the guards would furnish absolute protection to those working around the machinery.

Instruction No. 9 submits to the jury the question of delegated authority with reference to the guarding of the machinery by the appellant. We understand from the opinion in the *Streeter v. Western Wheeled Scraper Co.* case, *supra,* this authority cannot be delegated. There was, therefore, no error in refusing this instruction.

Appellant's tenth instruction submits to the jury the question of the guarding or protecting of the machinery in question. This instruction would probably be good were it not for the fact that it, in effect, requires that the danger from the machinery must be entirely eliminated, without reference to the question of the practical operation of said machinery, and for this reason we do not believe that the refusal of this instruction was error.

Instruction No. 13 attempts to define what in law constitutes "dangerous machinery," and then calls the attention of the jury to the question of appellee's intestate having worked around said machinery for five years as evidence to show said machinery was not

dangerous.   There was no error in refusing this instruction.

Finding no reversible error in the record, the judgment of the trial court should be and is affirmed.

*Affirmed.*